IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 18-CR-28-LRR |
| | ) | |
| vs. | ) | **RESISTANCE TO** |
| | ) | **DEFENDANT'S MOTION** |
| TIFFANY YOUNGBLOOD, | ) | **FOR REVIEW OF** |
| | ) | **DETENTION ORDER** |
| Defendant. | ) | |

The government requests this Court deny defendant's motion to review Magistrate Judge Mahoney's pretrial detention order. Defendant should remain detained pending trial in this matter. Judge Mahoney properly found, by clear and convincing evidence, that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community.

**I.     BACKGROUND FACTS AND PRIOR PROCEEDINGS**

On March 6, 2018, defendant was charged in a criminal complaint with one count of distributing, and aiding and abetting the distribution of, a controlled substance, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. (MJ Dkt. 3).[1] An affidavit in support of the criminal complaint alleged that defendant and her co-defendant, Dino Harrington, were involved in the distribution of heroin during two separate controlled transactions in March 2018. (*Id.*).

---

[1] There are two docket numbers for this matter. "MJ Dkt." refers to Case No. 18-MJ-68-CJW. "CR Dkt." refers to Case No. 18-CR-28-LRR. The latter docket superseded the former docket upon the grand jury's return of an indictment against defendant. "Tr." refers to the detention hearing transcript.

1

On March 6, 2018, defendant made her initial appearance on the criminal complaint. (MJ Dkt. 9). The government sought defendant's detention. (*Id.*). The Court issued an order of temporary detention and scheduled a joint preliminary and detention hearing. (MJ Dkt. 11).

The preliminary and detention hearings were held on March 9, 2018, before Judge Mahoney. (MJ Dkt. 18). The United States called DEA Task Force Officer Bryan Furman as its only witness. (*Id.*). Neither defendant presented any evidence. (*Id.*).

TFO Furman testified regarding two controlled purchases of heroin from defendant and her co-defendant Dino Harrington. These controlled purchases took place on March 1 and March 5, 2018. (TR 5). The same confidential source ("CS") was utilized on each occasion. (*Id.*). The CS was searched on each occasion, with no contraband found. (TR 5-6). The CS's vehicle was also searched on each occasion, with no contraband found. (TR 6). The CS was given preserialized currency, was equipped with a recording device and transmitter, and was kept under visual surveillance of law enforcement at all times after the CS was searched, until the CS arrived at the buy location. (TR 6). The CS had purchased heroin from the defendants before, prior to CS's work as an informant, and told officers that CS would usually meet with the defendants at a gas station or rest stop near the airport, south of Cedar Rapids. (TR 6-7).

On March 1, 2018, the CS sent a text message to the phone number known by CS to be used by the defendants. (TR 7). CS was told to meet at the McDonalds

restaurant on Wright Brother's Blvd, near the airport. (TR 7-8). The CS later received another text message from the defendants, telling the CS to instead go to the Kwik Star gas station adjacent to the McDonalds. (TR 8). The CS was instructed to go inside the men's restroom. (TR 8). Surveillance officers observed a four-door sedan with Minnesota license plates arrive at the gas station. (TR 8-9). Officers knew this vehicle to be driven by the defendants and had, in fact, been conducting surveillance on the defendants even prior to them arriving at the gas station. (TR 9). The vehicle parked near a surveillance officer, who was able to observe defendant hand something to co-defendant Harrington, prior to Harrington exiting the vehicle and entering the gas station. (TR 9). Harrington was inside the gas station for approximately two minutes. (TR 10). Defendant remained inside the vehicle. (TR 11). Defendant and Harrington then left the gas station. (TR 11). The CS told officers that Harrington sold him the heroin. (TR 11).

The controlled buy on March 5 was very similar to the buy on March 1. However, prior to the CS even contacting defendants, CS received a text from defendants that stated, "We are up early. Place your order." (TR 11). The CS sent a text message to the same phone number, and was instructed to meet at the same Kwik Star gas station. (TR 11). This time, however, the defendants subsequently instructed the CS to meet instead at the McDonalds, inside the men's restroom. (TR 11-12). The same four-door sedan with Minnesota plates arrived, and officers observed Harrington go inside the McDonalds. (TR 12). Defendant remained inside the vehicle. (TR 12-13). According to the CS, Harrington again met with CS inside

3

the restroom and sold CS heroin. (TR 12). The CS paid $100—the same amount paid during the first buy. (TR 12).

Officers maintained constant surveillance on defendants after they left McDonalds. (TR 13). They executed a traffic stop and identified the driver as Harrington and the passenger as defendant. (TR 13). On the floorboard of the vehicle, where defendant was seated, officers located a purse that contained a pistol. (TR 14). The pistol had a fully loaded magazine inserted. (TR 15). In that same area of the vehicle, officers located a garbage sack that contained the remains of packaging material used to package narcotics. (TR 14).

A search of defendant resulted in the seizure of twelve separately wrapped baggies of heroin in defendant's coat pocket. (TR 16). The currency used during the controlled buy was found in Harrington's pocket. (TR 16).

During a post-*Miranda* interview, defendant admitted that she was involved with Harrington in the distribution of heroin. (TR 17). Defendant stated that she would usually "run the phone" and coordinate the orders, while Harrington would actually meet with the customers. (TR 17). Defendant admitted that she possessed the firearm found in her purse. (TR 17-18). She had a valid permit, and indicated that she purchased the gun from a local gun shop. (TR 17-18). When asked why she needed a gun, she stated that she possessed it for protection due to there being family members that live in Cedar Rapids who are rival drug dealers. (TR 17-18).

She indicated that she was having a dispute with those individuals regarding their drug-dealing rivalry. (TR 18).[2]

On or about January 25, 2018, police officers received information from the elementary school where defendant's children attend. (TR 19). The children were in second grade. (TR 19). The children told staff that their parents (referring to defendant and Harrington) did not work, but instead that they would package white powder from big packages into smaller packages, and deliver those packages. (TR 19). The children told staff members that the white powder was hidden behind the vegetables in the kitchen of their home. (TR 19).

At the conclusion of the hearing, Judge Mahoney found there were no conditions or combination of conditions that could reasonably assure the safety of the community or another person, and thus ordered defendant's pretrial detention. (Tr. 57). Judge Mahoney noted that, based on the pretrial services report alone, she was surprised the government was seeking detention. (TR 56). Defendant has no criminal history. (MJ Dkt. 17). She reported some employment, although her most recent employment ended in 2017. (*Id.*). But the court noted that the pretrial services report did not take into account several factors, including the nature and circumstances of the offense, the weight of the evidence, or the rebuttable presumption that applied in this case. (TR 57).

---

[2] Law Enforcement was already aware of a dispute between defendant and these "rival" family members. On December 6, 2017, police responded to defendant's residence. (TR 18). According to defendant, these individuals pointed a gun at her, which resulted in her brandishing her firearm as well. (TR 18-19).

5

Judge Mahoney noted that drugs are always a danger, but that heroin represents an increased danger. (TR 57). In the written ruling, Judge Mahoney found the weight of the evidence as "incredibly strong." (MJ Dkt. 19). Judge Mahoney emphasized the firearm that was found in her purse. (MJ Dkt. 19; TR 58). Judge Mahoney also considered the testimony regarding the report from the school, stating that "the information regarding minor children indicates a particular risk of danger posed to those children. (MJ Dkt. 19).

## II. ARGUMENT

### A. Law

As indicated, defendant seeks review of the Magistrate Judge's detention order under 18 U.S.C. § 3145(b). This Court's review is *de novo*. *United States v. Maull*, 773 F.2d 1479, 1482 (8th Cir. 1985).

Because defendant stands charged of a drug trafficking crime for which the maximum term of imprisonment is 10 years or more under the Controlled Substances Act, there is a rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of the community. 18 U.S.C. § 3142(e). If the Court "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," then the Court must order the defendant detained pending the trial. *Id.* Clear and convincing evidence must support a finding that no condition or combination of conditions will reasonably assure the safety of the community. 18 U.S.C. § 3142(f). A preponderance of the evidence may

6

establish a finding that no condition or combination of conditions will reasonably assure the defendant's appearance. *Id.*

In determining whether any condition or combination of conditions will reasonably assure the safety of the community and defendant's appearance, the Court should consider all available information about the defendant. This information includes: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against defendant; (3) the history and characteristics of defendant; and (4) the nature and seriousness of the danger to the community that would be posed by defendant's release. 18 U.S.C. § 3142(g).

**B.    Analysis**

This Court should affirm the defendant's pretrial detention. The nature and circumstances of the charged offenses are serious. The charged offense involves the distribution of heroin, a dangerous drug. It also involves a loaded firearm that was in the vehicle with defendant when Harrington sold heroin to the CS inside the McDonalds's restroom. Defendant was in the possession of multiple baggies of heroin, that the evidence shows she possessed with the intent to distribute, while in the possession of this firearm. Defendant admitted that she possessed the firearm for protection from family members, who are also rival drug dealers. Defendant's involvement in the sale of heroin, while in the possession of a firearm, is extremely dangerous conduct. Further, defendant did not merely play a minimal role in the offense. Defendant admitted that she was the person who coordinated the heroin purchases.

The weight of the evidence against defendant is, as Judge Mahoney found, incredibly strong. Defendant was identified as being the passenger inside the vehicle during the controlled buys and was in possession of additional baggies of heroin during the traffic stop immediately after the buys. She admitted to her involvement.

Finally, the testimony regarding the information provided by the school is particularly aggravating. The fact that second-grade children observed defendant and Harrington packaging heroin, and that they knew where the heroin was kept (behind the vegetables), shows a complete disregard by defendant for the safety of her children. Defendant placed her heroin trafficking activity at a higher priority than the safety of her own children.

Defendant claims that she does not represent a danger. Defendant notes that the record does not support a finding that the children were ever exposed to heroin in the home. (MJ Dkt. 26 at p. 4). However, the record does support the finding that the children observed the heroin and knew where it was kept.

Defendant also claims that, while she did possess a firearm, she did not "physically delivery heroin while possessing it." (*Id.*). But defendant did possess the loaded firearm while possessing heroin with the intent to distribute. Further, defendant possessed the firearm in the vehicle in the parking lot while Harrington physically delivered the heroin to their customer.

Defendant argues that there are conditions that would protect the public. (*Id.* at p. 26). Defendant notes that her mother is living in the home and could

ensure that the home environment was a safe one. There is very little evidence in the record regarding defendant's mother's ability to control defendant's actions. Defendant points out that DHS is "available to take whatever protective measures might be appropriate." (*Id.*). But the only evidence in the record regarding DHS is essentially that DHS had visited the home, had placed the children with defendant's mother, would take more "intensive precautions" if defendant were released to the home. (TR 20, 35-36). Given defendant's past decision to place her heroin trafficking activity at greater importance than the safety of her children, it is unclear that any precautions taken by DHS or the Court would adequately protect the children and the community.

## III. CONCLUSION

For the above reasons, the Magistrate Judge correctly ordered defendant's pretrial detention, and this Court should decline to set aside the detention order.

Respectfully submitted,

PETER E. DEEGAN
United States Attorney

By: */s/ Justin Lightfoot*

JUSTIN LIGHTFOOT
Assistant United States Attorney
111 7th Avenue SE, Box 1
Cedar Rapids, IA 52401-2101
(319) 363-6333
(319) 363-1990 (Fax)
Justin.Lightfoot@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on April 19, 2018, I electronically filed the foregoing with the Clerk of Court using the ECF system, which will send notification of such filing to the parties or attorneys of record.

UNITED STATES ATTORNEY

BY: */s/ RAL*